TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00001-CV






Hugh L. Scott/Jim R. Sebree, Appellants



v.



Jim R. Sebree/Hugh L. Scott, Appellees







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT


NO. 96-088-C368, HONORABLE BURT CARNES, JUDGE PRESIDING






 This case involves an option contract to purchase real property. Hugh L. Scott, the
optionee, sued Jim R. Sebree and Chester Hood, (1) the optionors, on several theories seeking
damages or, alternatively, specific performance. Following a jury trial, the trial court rendered
judgment awarding Scott specific performance, attorney's fees, and costs of court. Both parties
appeal. We will affirm.


FACTUAL AND PROCEDURAL BACKGROUND



 Sebree and Hood each owned an undivided one-half interest in a piece of real
property located in Williamson County, Texas. On February 1, 1993, Sebree and Hood entered
into a "Lease-Purchase Agreement" (the "Lease") with Scott whereby Scott would lease the
property with an option to purchase at any time for $150,000, less the monthly rental payments
he had made up to the date of purchase. The parties later amended the Lease to allow Scott to
sublease the property to a third party and to increase the amount of monthly rent paid by Scott. 
The Lease term was three years; the option to purchase therefore expired on February 1, 1996.

 Approximately one month before the expiration of the Lease, Scott and Hood
discussed Scott's desire to exercise his purchase option; however, the parties disagree on the
content of this discussion. Scott testified that he requested Sebree and Hood to prepare a title
policy and general warranty deed as required by the Lease terms. Hood, on the other hand,
testified that Scott indicated he did not want a title policy because he had previously reviewed the
title in connection with his sublease and was satisfied. The parties do agree that Scott did not
speak to Sebree directly about Scott's intention to exercise the option.

 Sometime in January 1996, Scott contacted a title company to order his own title
commitment. Through this process, Scott learned of various liens and encumbrances on the
property. Scott complained to Hood that the liens were clouds on the title and must be released
before closing. In the meantime, Sebree had contacted his own title company to inquire about a
title commitment, although he never actually ordered one. Closing was set for February 1, 1996,
but was apparently canceled. The parties disagree as to who canceled the closing: Scott testified
that Hood canceled because Hood and Sebree could not produce clear title as required by the Lease
terms; Hood testified that Scott canceled. In any event, title to the property was not passed to
Scott on February 1, 1996, and the option expired. In May 1996, Hood conveyed his one-half
interest in the property to Scott and was dismissed from this lawsuit prior to trial.

 At trial, Scott argued that his failure to timely exercise his option was due to
Sebree's conduct. Scott relied on the following language found in the Agreement: "Lessor's [sic]
affirm that the property is currently free and clear of any and all liens, indebtedness, lawsuits, or
other encumbrances . . . and that they are obligated to maintain this status-quo throughout the term
of the lease." Because the property had unreleased liens throughout the lease period, Scott
claimed he was precluded by Sebree's conduct from exercising his option and that Sebree had
committed fraud. Sebree's counter-argument was two-fold: first, that he had no knowledge of
the liens when he signed the Lease and did not learn of them until January 1996; second, that even
though releases of the liens had not yet been filed, the debts secured by the liens had already been
paid in full and thus would not hinder closing. Sebree filed a counterclaim against Scott for breach
of contract.

 The case was submitted to a jury on Scott's theories of (1) breach of contract;
(2) statutory fraud in a real estate transaction, Tex. Bus. & Com. Code Ann. § 27.01 (West 1987)
("statutory fraud" or "section 27.01"); and (3) violations of the Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 1987 & Supp. 1999)
("DTPA"). Rejecting Sebree's claim that Scott had breached the contract, the jury found that
Scott's failure to exercise his option was excused by Sebree's conduct. Further, Scott obtained
jury responses supporting his claims for breach of contract, statutory fraud, and DTPA violations,
including findings of additional damages under the DTPA claim and exemplary damages under
the statutory-fraud claim. Because the parties stipulated as to the amount of actual damages, no
jury question was submitted on that issue.

 In his "Motion to Sign Judgment," Scott requested that the trial court award him
specific performance in lieu of monetary damages, but also requested other damages recoverable
under section 27.01: attorney's fees, costs of court, exemplary damages, expert witness costs, and
deposition copy costs. (2) In response, Sebree argued that specific performance is not available under
section 27.01. The trial court apparently agreed, limiting damages to those available for breach
of contract--specific performance, attorney's fees, and costs of court. The court declined to award
the additional types of damages available under section 27.01--exemplary damages, expert witness
fees, and deposition copy costs. Both Scott and Sebree perfected appeals.

 In his appeal, Scott argues that the trial court erred in rendering judgment for
damages under a breach-of-contract theory rather than allowing him to elect specific performance
in lieu of monetary damages as his remedy under his statutory-fraud cause of action. Scott argues
he was thus erroneously deprived of the exemplary damages, expert witness fees, and deposition
copy costs to which a party recovering under section 27.01 is entitled.

 In his capacity as appellant, Sebree presents three issues regarding the breach-of-contract theory on which the judgment favoring Scott was ultimately based: (1) whether there is
any evidence to support the submission of the jury question on Sebree's "conduct" excusing
Scott's failure to exercise his option; (2) whether Scott is entitled to attorney's fees if he was not
excused from exercising his option; and (3) whether the trial court erred in refusing to submit
Sebree's counterclaim against Scott for breach of contract. In his capacity as appellee, Sebree also
raises three cross-points concerning the sufficiency of the evidence to support the jury's fraud and
DTPA findings that ultimately were not the foundation of the judgment: (1) whether there is
legally sufficient evidence to support the jury's finding that Sebree committed statutory fraud; (2)
whether there is sufficient evidence to show Sebree's conduct was the proximate cause of actual
damages to Scott; and (3) whether there was legally or factually sufficient evidence to support the
jury's finding that Sebree acted with "actual awareness" to support an award of exemplary
damages. (3)


DISCUSSION



SCOTT'S ISSUE PRESENTED

 The main issue for this Court's consideration is whether specific performance is
available as a remedy for statutory fraud. Section 27.01 of the Texas Business and Commerce
Code provides a statutory cause of action for fraud in real estate transactions. See Tex. Bus. &
Com. Code Ann. § 27.01 (West 1987). The statute provides that a person who makes a false
representation of a past or existing material fact in a real estate transaction is liable to the person
defrauded for "actual damages" as well as "reasonable and necessary attorney's fees, expert
witness fees, costs for copies of depositions, and costs of court." Id. § 27.01(b), (e). If the false
representation is made with actual awareness of its falsity, exemplary damages may also be
recovered. Id. § 27.01(c).

 Sebree does not contend that Scott is barred from electing specific performance as
a remedy in this case. Rather, he complains that Scott is attempting to "mix and match" remedies. 
He asserts that Scott had to make an election: either elect statutory fraud and recover actual
(monetary) damages, exemplary damages, attorney's fees, expert witness fees, deposition copy
costs, and court costs, or, on the other hand, elect breach of contract and recover specific
performance, attorney's fees, and court costs. Sebree argues that Scott may not elect specific
performance, which Sebree asserts is only a remedy for breach of contract, and couple it with the
special types of damages available under section 27.01.

 Scott concedes that section 27.01 does not expressly provide for the remedy of
specific performance in lieu of monetary damages. Nonetheless, Scott argues that an award of
specific performance is consistent with a finding of statutory fraud. Under the facts of this case,
we agree that specific performance was available to Scott in lieu of monetary damages as a remedy
for his statutory-fraud cause of action.


Equitable Remedies Under Section 27.01 in Lieu of Actual Damages


 Section 27.01(b) provides that a person who commits actionable statutory fraud is
liable to the person defrauded for "actual damages." Tex. Bus. & Com. Code Ann. § 27.01(b)
(West 1987). In the context of section 27.01, this phrase has been interpreted to mean "such
damages as result directly, naturally and proximately from fraud." El Paso Dev. Co. v. Ravel,
339 S.W.2d 360, 364 (Tex. Civ. App.--El Paso 1960, writ ref'd n.r.e.). The Texas Supreme
Court has specifically stated that "actual damages" as used in the DTPA means those recoverable
at common law. See Farrell v. Hunt, 714 S.W.2d 298, 300 (Tex. 1986). Because we believe the
court's treatment of "actual damages" under section 27.01 would mirror the construction of that
phrase under the DTPA, we conclude that "actual damages" recoverable for statutory fraud are
those damages available for fraud at common law.

 There are two alternative measures of damages for common-law fraud: the out-of-pocket measure and the benefit-of-the-bargain measure. See Formosa Plastics Co. USA v.
Presidio Eng'rs, 960 S.W.2d 41, 49 (Tex. 1998). Out-of-pocket damages are found by comparing
the value paid to the value received, while benefit-of-the-bargain damages compare the value as
represented to the value received. Id. In addition to the alternative measures of damages, Texas
courts have long held under general principles of common-law fraud that one who is induced by
fraud to enter into a contract has a choice of remedies: he may either recover his monetary
damages flowing from the fraud or he may elect the equitable remedy of rescission in lieu of
damages and demand a return of any amount paid. See National Resort Communities, Inc. v.
Holleman, 594 S.W.2d 195, 196 (Tex. Civ. App.--Austin 1980, writ ref'd n.r.e.); Roberts v.
Tipton, 562 S.W.2d 921, 923 (Tex. Civ. App.--Waco 1978, writ ref'd n.r.e.); Wolff v. Cohen,
281 S.W. 646, 648 (Tex. Civ. App.--Beaumont 1926, writ dism'd). This election of remedies
recognizes that, depending on the circumstances, a defrauded party may not be made whole by a
recovery of actual damages, but instead may need an equitable remedy such as rescission.

 We do not believe that by using the term "actual damages" in section 27.01 the
legislature intended to preclude a defrauded party from utilizing an appropriate equitable substitute
for out-of-pocket or benefit-of-the-bargain damages. Rescission and specific performance are
equitable remedies used as substitutes for monetary damages when such damages would not be
adequate. See Humphrey v. Camelot Retirement Community, 893 S.W.2d 55, 59 (Tex.
App.--Corpus Christi 1994, no writ); Claflin v. Hillock Homes Inc., 645 S.W.2d 629, 633-34
(Tex. App.--Austin 1983, writ ref'd n.r.e.); Estate of Griffin v. Sumner, 604 S.W.2d 221, 225
(Tex. Civ. App.--San Antonio 1980, writ ref'd n.r.e.). Further, as noted above, under common-law principles of damages for fraud, a defrauded party has always had the freedom to elect
equitable relief in the form of rescission in lieu of out-of-pocket actual damages. Logically, we
think "actual damages" in the statutory-fraud context should receive the same treatment as "actual
damages" in the common-law fraud context. We see no reason why this statute should be
construed to deny equitable relief in lieu of monetary damages where the facts justify an equitable
remedy, merely because the fraud is a statutory violation.

 Our belief that equitable relief is compatible with the "actual damages" provision
of section 27.01 is supported by the holding in Clem v. Evans, 286 S.W. 273 (Tex. Civ.
App.--Dallas 1926), rev'd on other grounds, 291 S.W. 871 (Tex. Comm'n App. 1927, holding
approved). In Clem, the court noted that the applicable statutory-fraud provision did not
specifically provide for rescission as an available remedy; however, the defrauded party still had
the right either to stand by the contract and seek damages or to rescind the contract. Id. at 274. 
In so holding, the court stated: "We do not believe this statute denies this relief given under
general laws and rules of equitable jurisprudence against the alleged perpetrators of actual fraud." 
Id. (4) We agree that in appropriate circumstances the general rules of equity jurisprudence permit
a substitution of equitable relief under this statute.

 Also supporting equitable relief within the context of statutory fraud is Bennett v.
Mason, 572 S.W.2d 756 (Tex. Civ. App.--Waco 1978, writ ref'd n.r.e.). There, purchasers of
land were awarded exemplary damages for statutory fraud and were also allowed to rescind the
land sale. See id. at 758. Although the court did not directly address the question of whether
rescission is an available remedy for statutory fraud, the holding clearly indicates that the
exemplary damages were upheld pursuant to section 27.01 and that the rescission was based on
the same fraudulent actions. See id. at 760. Similarly, in Maeberry v. Gayle, 955 S.W.2d 875
(Tex. App.--Corpus Christi 1997, no pet.), the court upheld a judgment for rescission of a deed
based on fraud, as well as attorney's fees pursuant to section 27.01, implying that rescission is
consistent with section 27.01. (5)

 We are aware that Clem, Bennett, and Maeberry all involve the election of the
equitable remedy of rescission rather than specific performance. We have no difficulty, however,
in applying the same logic to specific performance. Both remedies are equitable substitutes for
actual monetary damages: rescission takes the place of out-of-pocket damages, while specific
performance takes the place of benefit-of-the-bargain damages. We therefore hold that a defrauded
party may elect specific performance as a remedy under section 27.01 in lieu of monetary damages
where the facts of the case require specific performance to ensure a just result.


Specific Performance Is the Most Equitable Remedy Under the Facts Presented


 Because the facts in the instant case are somewhat unique in the context of statutory
fraud, the most equitable remedy to adequately compensate Scott for Sebree's fraudulent acts is
"benefit of the bargain" in the form of specific performance. The record shows that the value of
the property in issue increased significantly from the date the parties signed the Lease and the date
the option expired. Because of the increase in value, Scott's loss includes the lost profits he would
have realized had he not been precluded from exercising his option by Sebree's fraud. (6) However,
we believe that simply allowing Scott to recover damages in the form of lost profits would not
make Scott whole and would not effectuate a just result.

 It is well understood that specific performance is more readily available as a remedy
for the sale of real estate than for the sale of personal property. See 67 Tex. Jur. 3d Specific
Performance § 62 (1989) (and authorities cited therein). This is because damages are generally
believed to be inadequate in connection with real property. See id. Although specific performance
is not a matter of right, it is often granted where a valid contract to purchase real property is
breached by the seller. See Kress v. Soules, 261 S.W.2d 703, 704 (Tex. 1953). We do not
believe that the legislature intended for persons defrauded under section 27.01 in real estate
transactions to be precluded from substituting the widely accepted equitable relief needed to make
them whole.

 Allowing Scott to elect specific performance under his statutory fraud cause of
action will not result in double recovery. Scott is not requesting both monetary damages and
specific performance; his request is for specific performance in lieu of monetary benefit-of-the-bargain damages. We hold that specific performance is consistent with section 27.01 and that,
under the facts presented here, Scott was entitled to elect specific performance in lieu of monetary
damages under his statutory-fraud cause of action.


Expert Witness Fees and Deposition Copy Costs


 Section 27.01(e) provides that any person committing statutory fraud is liable to the
defrauded party for "reasonable and necessary" expert witness fees and costs for copies of
depositions. Tex. Bus. & Com. Code Ann. § 27.01(e) (West 1987). Scott asks this Court to
award $1,800 for expert witness fees and $545.22 for deposition copy costs, both of which the
trial court denied. Because we have held that Scott may elect specific performance under section
27.01, Scott is entitled to these expenses if they were "reasonable and necessary." Scott did not
request the submission of jury questions on these issues, however, so we are authorized to render
judgment that he recover those amounts only if the record contains conclusive proof of their
reasonableness and necessity.

 After a careful review of the entire record, we are unable to find any evidence,
much less conclusive evidence, regarding either the amount of deposition copy costs or their
reasonableness. Further, we find no evidence of the reasonableness or necessity of the $1,800
expert witness fees. Although the record does show that the parties stipulated that the expert in
question charged Scott $1,800 for his services, there is no evidence that this amount was
reasonable or necessary. Recovery of expert witness fees will be denied where there is evidence
of an amount charged or paid, but no evidence that the charges are reasonable. See Valdez v.
Valdez, 930 S.W.2d 725, 733 (Tex. App.--Houston [1st Dist.] 1996, no writ). We are unable
to conclude, therefore, that the trial court erred in denying Scott expert witness fees and deposition
copy costs pursuant to section 27.01.


SEBREE'S CROSS-POINTS


 Our holding that the remedy of specific performance in lieu of monetary damages
is available under section 27.01 does not end our inquiry. Having determined that Scott may elect
specific performance under his statutory fraud cause of action, we now turn to Sebree's cross-points concerning the legal sufficiency of the evidence to support the jury's findings that Sebree
committed statutory fraud and acted with "actual awareness."

 In deciding a no-evidence point we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Garza v. Alvair, 395 S.W.2d 821, 823 (Tex. 1965). See generally William Powers,
Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev.
515 (1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. 65 (1974).


Findings of Fraud

 Sebree argues that the evidence regarding his failure to comply with the Lease
creates liability sounding only in contract. Therefore, he argues, there is no evidence supporting
a finding of fraud. We disagree. The Texas Supreme Court recently confirmed that the legal duty
not to fraudulently induce someone to enter into a contract is separate and independent from any
duties established by the contract itself. See Formosa Plastics, 960 S.W.2d at 47. Tort damages
for fraudulent inducement are recoverable regardless of whether the representations are later
subsumed in a contract or whether the defrauded party suffers only economic loss related to the
contract. Id.

 In the present case, the record contains ample evidence that Sebree committed
statutory fraud. To maintain an action for fraud in a real estate transaction, section 27.01 requires
a false representation made to induce someone to enter into a contract, reliance by the defrauded
person, and resulting damages. See Tex. Bus. & Com. Code Ann. § 27.01 (West 1987). Finding
evidence in the record on each required element, we overrule Sebree's first cross-point.

 In cross-point two, Sebree argues that his conduct was not the "cause in fact" of
Scott's failure to exercise his option. However, the jury was not required to make a finding on
proximate cause. A defrauded party is entitled to those damages resulting directly and naturally
from fraud as general damages. El Paso Dev. Co., 339 S.W.2d at 363. Although special damages
must be shown to be the proximate result of fraud, general damages are allowed and assumed by
the statute. Id. at 365. In the instant case, the parties stipulated as to actual monetary damages,
and the record shows these were general damages naturally resulting from the fraud. Because the
jury was not required to find "proximate cause," we overrule Sebree's second cross-point.


Finding of Actual Awareness Supporting Exemplary Damages


 In his third cross-point, Sebree argues that the evidence was legally insufficient to
support the jury's finding that he acted with "actual awareness." We agree. In order to recover
exemplary damages under section 27.01, the defrauded party must show that the defrauding party
had actual awareness of the falsity of his representation. See Tex. Bus. & Com. Code Ann.
§ 27.01(c) (West 1987). After finding that Sebree had committed fraud against Scott, the jury
found that Sebree had "actual awareness" of the falsity of the representation and assessed $50,000
in exemplary damages.

 The Texas Supreme Court has recently outlined what is required to find that a party
acted with "actual awareness" in a DTPA case:


 "Actual Awareness" does not mean merely that a person knows what he is
doing; rather, it means that a person knows what he is doing is false, deceptive, or
unfair. In other words, a person must think to himself at some point, "Yes, I know
this is false, deceptive, or unfair to him, but I'm going to do it anyway."



St. Paul Surplus Lines Ins. Co. v. Dal-Worth Tank Co., 974 S.W.2d 51, 53-54 (Tex. 1998). 
Although the St. Paul Surplus court addressed "actual awareness" in the context of DTPA
violations rather than statutory fraud under section 27.01, we believe the court's treatment of
"actual awareness" would be similar, if not identical, under the two statutes.

 After a careful review of the record in the instant case, we find an absence of
legally sufficient evidence to support the jury finding that Sebree acted with "actual awareness"
of the falsity of his misrepresentations regarding the existence of unreleased liens. The only
evidence arguably supporting the jury's verdict is the following portion of Sebree's testimony:


Q. Haven't you previously testified on several occasions that you knew that the
liens were not released on February 1st, 1993?


A. If that's what I testified to, then at that time that's what I believed in. It's hard
to remember, you learn so much stuff, you know, from one point to the other
point at which point did you learn that stuff.


Q. Well, on February 1st, 1993, being aware that those liens had not been
released, did you think about disclosing that fact to Mr. Scott?


A. The fact that I did know that we had paid for the property and that I could
prove that, I was not concerned with disclosing something that was totally
irrelevant to Mr. Scott.



This testimony does nothing to establish that Sebree had actual awareness that the liens were not
released on the initial date of the Lease. Sebree does not acknowledge that his prior deposition
testimony indeed confirms his awareness of the liens on the date of the Lease; rather he states that
if that was his prior testimony, then he believed it to be true at the time. Because the referenced
deposition testimony was never introduced in evidence, we are unable to determine whether Sebree
in fact made prior statements concerning his knowledge of the falsity of his representations to
Scott. Without the deposition testimony, we are unable to say that there is any evidence that
Sebree said to himself, "Yes, I know this representation is false, but I'm going to make it
anyway." On the contrary, all of the evidence supports a finding that Sebree did not have "actual
awareness" of the liens until 1996, shortly before the option was to expire.

 Because the evidence supporting the jury finding of "actual awareness" on the part
of Sebree does not rise beyond a mere scintilla, we sustain Sebree's third cross-point and conclude
that the trial court correctly declined to award Scott exemplary damages.


SEBREE'S ISSUES PRESENTED

 Sebree, in the posture of appellant, raises three issues for this Court's consideration. 
We find all three arguments to be without merit.

 Sebree first argues that either there was no evidence to support submitting the jury
question on Sebree's "conduct" or that the evidence was factually insufficient to support the jury's
response. The instruction submitted to the jury asked: "Was Scott's failure, if any, to exercise
the option due to the conduct of Sebree?" Sebree's complaint focuses on the term "conduct" as
used in the jury question. Sebree argues that because he had "no duties to perform" under the
Lease until the option was exercised by Scott there was no "conduct" that could have been the
basis for the jury question. We do not read the term "conduct" so narrowly.

 Equity excuses strict compliance of an option contract where some act such as a
misleading representation by the optionor prevents the optionee from exercising the option right. 
See Cattle Feeders, Inc. v. Jordan, 549 S.W.2d 29, 33 (Tex. Civ. App.--Corpus Christi 1977,
no writ). The present record contains evidence that Sebree failed to keep the property free from
liens during the Lease term as required. This constitutes "conduct" that the jury was authorized
to find excused Scott's strict compliance with the option requirements. Therefore, we hold that
there was more than a scintilla of evidence to support submission of the question.

 When reviewing a jury verdict to determine the factual sufficiency of the evidence,
we must consider and weigh all the evidence and should set aside the judgment only if it is so
contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Cain v.
Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re Estate of King, 244 S.W.2d 660, 661 (Tex. 1951);
see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex. 1986). The record clearly provides
significant evidence of Sebree's conduct on which the jury could have relied to excuse Scott from
exercising his option. We overrule Sebree's first point.

 Sebree next argues that if this Court agrees with his first issue, and thus finds that
there was no or insufficient evidence that Sebree's conduct excused Scott from failing to exercise
his option, then Scott is not entitled to attorney's fees. Because we find Sebree's argument as to
his first issue to be without merit, we need not address this issue.

 Finally, Sebree asserts that the trial court erred in refusing to submit a jury question
on his counterclaim for Scott's alleged breach of contract. Sebree's counterclaim was based on
a clause in the Lease requiring Scott to obtain $1,000,000 of liability insurance on the property. 
The record shows that Scott did not maintain the requisite insurance for more than a year after the
Lease was signed. Nonetheless, the trial court did not err in failing to submit the question to the
jury. The essential elements of a suit for breach of contract are that a valid contract existed, that
the plaintiff performed, that the defendant breached, and that the plaintiff has suffered resulting
damages. See Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App.--Houston [1st
Dist.] 1997, no writ). There is no evidence that Sebree suffered any injury as a result of Scott's
breach (assuming it to be such), and Sebree does not even attempt to argue that he has sustained
any damages. Because Sebree offered no evidence on an essential element of his counterclaim,
the trial court was not required to submit a jury question on this issue.


CONCLUSION



 Having found that, although Scott may recover specific performance under section
27.01, there is legally insufficient evidence to support awards of exemplary damages, expert
witness fees, and deposition copy costs, we affirm the judgment of the trial court in all respects.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd, and Powers*

Affirmed

Filed: February 11, 1999

Publish






* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Hood was dismissed from this lawsuit before the case went to trial.
2. Scott's motion did not seek any damages in connection with the jury's DTPA findings, and
he does not seek any such relief in this appeal.
3. Because Sebree perfected his own appeal, we conclude that placing cross-points in his
appellee's brief was an acceptable way of presenting these issues to this Court. See John Hill
Cayce, Jr., Anne Gardner, & Felicia Harris Kyle, Civil Appeals in Texas: Practicing Under the
New Rules of Appellate Procedure, 49 Baylor L. Rev. 867, 962-65 (1997).
4. This case is particularly persuasive considering it was decided under an earlier statutory-fraud provision specifically defining actual damages as the difference between the value of the
property as represented and as acquired. Act of March 11, 1919, 36th Leg., R.S., ch. 43, §§ 1-3,
1919 Tex. Gen. Laws 77, 78 (Tex. Rev. Civ. Stat. Ann. art. 4004, since repealed and codified
at Tex. Bus. & Com. Code Ann. § 27.01 (West 1987)). But see Bush v. Gaffney, 84 S.W.2d 759,
765 (Tex. Civ. App.--San Antonio 1935, no writ) (holding rescission incompatible with statutory
fraud in light of limited definition of actual damages contained in article 4004).
5. We also note that since the holding in International Bankers Life Insurance Co. v.
Holloway, 368 S.W.2d 567, 582-84 (Tex. 1963), courts often award exemplary damages in cases
involving wilful torts when a party elects equitable relief instead of actual damages. See, e.g.,
Consolidated Tex. Fin. v. Shearer, 739 S.W.2d 477 (Tex. App.--Fort Worth 1987, writ ref'd);
Seegers v. Spradley, 522 S.W.2d 951, 957 (Tex. Civ. App.--Beaumont 1975, writ ref'd n.r.e.). 
In Nabours v. Longview Savings & Loan Ass'n, 700 S.W.2d 901, 905 (Tex. 1985), the supreme
court stated that punitive damages are recoverable for wilful torts, and this applies to equitable
relief as well. We are persuaded that this same logic is applicable to allow specific performance
and exemplary damages under section 27.01.
6. The record also shows that the property is currently subject to a lease under favorable terms
to the property owner. Thus, in order to receive the full benefit of his bargain in money, Scott
would actually be entitled to an amount for lost profit on the land plus the monetary benefits of
the lease.


 contract. Sebree's counterclaim was based on
a clause in the Lease requiring Scott to obtain $1,000,000 of liability insurance on the property. 
The record shows that Scott did not maintain the requisite insurance for more than a year after the
Lease was signed. Nonetheless, the trial court did not err in failing to submit the question to the
jury. The essential elements of a suit for breach of contract are that a valid contract existed, that
the plaintiff performed, that the defendant breached, and that the plaintiff has suffered resulting
damages. See Wright v. Christian & Smith, 950 S.W.2d 411, 412 (Tex. App.--Houston [1st
Dist.] 1997, no writ). There is no evidence that Sebree suffered any injury as a result of Scott's
breach (assuming it to be such), and Sebree does not even attempt to argue that he has sustained
any damages. Because Sebree offered no evidence on an essential element of his counterclaim,
the trial court was not required to submit a jury question on this issue.


CONCLUSION



 Having found that, although Scott may recover specific performance under section
27.01, there is legally insufficient evidence to support awards of exemplary damages, expert
witness fees, and deposition copy costs, we affirm the judgment of the trial court in all respects.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd, and Powers*

Affirmed

Filed: February 11, 1999

Publish






* Before John Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. 
See Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. Hood was dismissed from this lawsuit before the case went to trial.
2. Scott's motion did not seek any damages in connection with the jury's DTPA findings, and
he does not seek any such relief in this appeal.
3. Because Sebree perfected his own appeal, we conclude that placing cross-points in his