TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00603-CV






Roy D. Foster, Appellant



v.



Centrex Capital Corp.; Centrex Capital Automobile Assets, Inc.; Oxford Resources

Corp.; NationsBank; Bank of America Texas, N.A., and Bank of

America Corporation, Appellees







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT

NO. 176,327-B, HONORABLE RICK MORRIS, JUDGE PRESIDING






 Appellant Roy D. Foster appeals the trial court's order granting summary judgment
in favor of appellees Centrex Capital Corp., Centrex Capital Automobile Assets, Inc., Oxford
Resources Corp., NationsBank, Bank of America, Texas, N.A., and Bank of America Corporation
(collectively "Bank of America").  Foster claims that he was overcharged by Bank of America when
he elected to prepay the balance on a retail installment contract he signed to finance a used car. 
Specifically, Foster contends that Bank of America charged him a $25 fee which was not authorized
by the terms of the contract. Foster sued for breach of contract. Bank of America moved for both
no-evidence and traditional summary judgments, asserting that the fee was authorized by statute and
that, in any event, Foster had no evidence of damages because the total payoff amount was less than
he would have paid under the statutory default provision. See Tex. R. Civ. P. 166a(a), (c), (i). The
trial court denied appellees' no-evidence motion but granted the traditional summary judgment
motion. We will affirm the judgment.


FACTUAL AND PROCEDURAL BACKGROUND


 On August 16, 1997, Foster bought a 1995 Cadillac Seville from Cleo Bay Used Cars
and signed a retail installment contract. All retail installment transactions are governed by chapter
348 of the Texas finance code (Motor Vehicle Installment Sales). See Tex. Fin. Code Ann.
§ 348.007 (West 1998). A retail installment transaction occurs when a retail buyer purchases a
motor vehicle from a retail seller (other than for resale purposes) and agrees with the retail seller to
pay part or all of the cash price in one or more deferred installments. Id. § 348.001(7). A retail
installment contract is an instrument that evidences such a transaction. Id. § 348.001(6). The terms
of a retail installment contract are determined by calculating a "time price differential" component
in addition to the principal balance owed for the vehicle. The time price differential is added to the
principal to determine the total amount of the retail buyer's indebtedness under a retail installment
contract. Id. § 348.001(9).

 The code specifies several methodologies to calculate the rate or amount of the time
price differential. Id. § 348.103. Section 348.103 states that a retail installment contract can provide
for any amount of time price differential permitted under section 348.104, .105, or .106, or any rate
of time price differential that does not exceed a yield permitted under those three sections. Id. 
Alternatively, a chapter 348 retail installment contract may also provide for a time price differential
according to the ceilings set out in chapter 303 (Optional Rate Ceilings). See id. § 303.001 (West
Supp. 2002). Section 303.001 provides that a contract that is subject to chapter 348 "may, as an
alternative to an interest rate or amount of time price differential allowed under that chapter, provide
for a simple or precomputed rate or amount of time price differential that does not exceed the
applicable ceiling provided by this chapter or by the equivalent yield authorized by Chapter . . . 348."
Id. § 303.001(b). (1)

 A retail buyer has the option to prepay a retail installment contract in full at any time
before maturity. Id. § 348.118 (West 1998). If a buyer prepays in full or if the holder of the contract
demands payment of the unpaid balance of the contract in full before the contract's final installment
is due, the buyer is entitled to receive a refund credit of a portion of the finance charges. Id.
§ 348.119. Section 348.119 further provides that a buyer is entitled to a refund credit as provided
by section 348.120 or 348.121, "as applicable." Id. Section 348.120 applies to refund credits upon
the prepayment of a retail installment contracts payable in "substantially equal successive monthly
installments beginning one month after the date of the contract." Id. § 348.120(a). Section 348.121
applies to all other retail installment contracts. Id. § 348.121; see also id. § 348.119.

 The retail installment contract Foster signed indicates that he financed an amount
totaling $22,340.66, for which he agreed to pay a time price differential of $8,259.34. The contract
lists $30,600.00 as the total amount of payments to be paid in seventy-two monthly installments of
$425.00. After making scheduled payments for over a year, Foster decided to prepay the balance of
the contract in late 1998 or early 1999. In calculating the refund credit under section 348.120, the
statute directs the holder to subtract from the original time price differential an acquisition cost of
$25, and then multiply the remaining amount by "the percentage of refund computed under
subsection (d)." See id. § 348.120(b). (2) At the time of prepayment, Foster's contract had been
assigned by the seller to Bank of America, which calculated the payoff amount to be $18,411.22. 
According to Exhibit No. 2-2 of appellee's motion for summary judgment, this payoff included a $25
fee. (3)

 Foster filed suit against the appellees for breach of contract, alleging that Bank of
America included in the final payoff amount a $25 acquisition fee not contracted for by the parties. (4) 
Foster's first amended original petition also included claims for breach of contract and fraud based
on the method in which the finance charge was calculated: "The Contract entered into by Plaintiff
provided that interest was to be calculated using simple interest. Defendants violated the terms of
the Contract by utilizing a different interest calculation that effectively gave them a higher rate of
interest and a greater return than the rate contracted for between the parties." Foster further asserted
that the retail installment contract that he signed was a simple interest contract. 

 Bank of America disputed this assertion and contended that the contract provided for 
a precomputed rate. Bank of America moved for summary judgment on both traditional and no-evidence grounds. Bank of America contended that Foster's contract did not call for the finance
charges to be calculated by a simple interest method, and additionally, it produced evidence that
indicated that the payoff amount it quoted to Foster resulted in a lower payoff amount than that
advocated by Foster, i.e., the simple interest method. Accordingly, Bank of America asserted, Foster
had presented no evidence of damages. The motion also asserted that there was no breach of
contract because the $25 acquisition fee is specifically authorized in a monthly retail installment
transaction by section 348.120 of the finance code. Alternatively, Bank of America asserted that any
damages surrounding the allegedly improper fee, if proven, would be de minimis. 

 After Bank of America filed its motion for summary judgment, Foster again amended
his original petition, dropping his claim based on Bank of America's alleged use of an improper
interest rate calculation to arrive at the payoff amount. Foster filed its response to the appellee's
summary judgment motion in which he argued that the finance code does not authorize the $25
acquisition fee in this case. He also asserted that his damages were not de minimis but did not
otherwise respond to Bank of America's assertion that there was no evidence of damages. 

 The trial court denied Bank of America's "no-evidence" motion but granted its
traditional summary judgment motion on the ground that the finance code provided for a $25
acquisition fee to be charged in this transaction. After Foster's motion for new trial was overruled
by operation of law, he filed a notice of appeal. Bank of America urges that the judgment be
affirmed on the ground specified, or in the alternative, it raises cross-points requesting that the
judgment be affirmed on other grounds raised in the motion.


DISCUSSION


Standard of Review

 Because the propriety of a summary judgment is a question of law, we review the trial
court's decision de novo. Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Texas Dep't
of Ins. v. American Home Assurance Co., 998 S.W.2d 344, 347 (Tex. App.--Austin 1999, no pet.).
The standards for review of a traditional summary judgment are well-established: (1) the movant
must show there is no genuine issue of material fact and that it is entitled to judgment as a matter of
law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment,
the court must take evidence favorable to the nonmovant as true; and (3) the court must indulge
every reasonable inference in favor of the nonmovant and resolve any doubts in the nonmovant's
favor. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985). A defendant who
moves for traditional summary judgment has the burden of disproving one essential element of each
pleaded cause of action or showing that the plaintiff cannot succeed on any theory pleaded. See San
Antonio Express News v. Dracos, 922 S.W.2d 242, 247 (Tex. App.--San Antonio 1996, no writ).
Where, as here, the trial court specified the grounds on which it was basing its decision for summary
judgment, we must review the grounds on which the trial court ruled, whether granted or denied, and
which are dispositive of the appeal. Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 625-26 (Tex.
1996); Baker Hughes, Inc. v. Keco R.&D., Inc., 12 S.W.3d 1, 5 (Tex. 1999).

 On a suit for breach of contract, the plaintiff has the burden to prove (1) the existence
of a valid contract, (2) performance by the plaintiff, (3) breach of the contract by the defendant, and
(4) damages sustained by the plaintiff as a result of the breach. Scott v. Sebree, 986 S.W.2d 364, 372
(Tex. App.--Austin 1999, pet. denied). In its motion for summary judgment, Bank of America
asserted that there was no evidence of breach of contract because chapter 348 of the finance code,
which applies to all motor vehicle retail installment contracts, authorizes a $25 acquisition fee to be
charged in connection with calculating a refund credit when a buyer elects to prepay a retail
installment contract. See Tex. Fin. Code Ann. §§ 348.119-121. 

 The order granting summary judgment recites several "findings" of the trial court,
including a finding by the court that Foster's contract was a simple interest contract and was not a
precomputed contract. The court further found that "the transaction at issue did not call for a refund
credit on the retail installment contract" but that section 348.120 nonetheless applied "by analogy."
Foster challenges this latter finding on appeal. Foster asserts that section 348.120 applies only to
retail installment contracts in which the time price differential is calculated on a precomputed basis;
therefore, when the court found that his contract was a simple interest contract that did not call for
a refund credit, it should not have applied section 348.120. Moreover, Foster contends, by applying
the statute by analogy to a non-refund transaction, the court judicially amended the statute. 

 Foster's argument hinges on his assertion, and the trial court's purported finding, that
the contract was not a precomputed transaction and hence did not call for a refund of finance
charges. Findings recited in a judgment, however, do not establish an issue on appeal. The Texas
Rules of Civil Procedure mandate that findings of fact be separately filed and not recited in a
judgment. See Tex. R. Civ. P. 299a; Frommer v. Frommer, 981 S.W.2d 811, 814 (Tex.
App.--Houston [1st Dist.] 1998, pet. dism'd) (findings of fact and conclusions of law recited in the
judgment cannot form the basis of a claim on appeal). Moreover, findings of fact are inappropriate
after a trial court renders a summary judgment. See IKB Indus. v. Pro-Line Corp., 938 S.W.2d 440,
441 (Tex. 1997); Linwood v. NCNB Tex., 885 S.W.2d 102, 103 (Tex. 1994). Therefore, we do not
consider the trial court's findings in our review. 

 Foster contends that a "refund" of finance charge is inapposite to a contract in which
the time price differential is calculated by the simple interest method. Moreover, Foster asserts that
the method set out in section 348.120 to determine the amount of refund credit presupposes a
precomputed transaction. In support of his argument, Foster cites an interpretive letter from the
Office of Consumer Credit Commissioner. Foster urges this Court to determine that the retail
installment contract at issue called for the time price differential to be calculated on a simple interest
basis. Bank of America responds that the statute is unambiguous in its express application to all
retail installment contracts and that even though its position is that the contract calculated the time
price differential on a precomputed basis, the fee would have been authorized even if the contract
had used a simple interest formula.

 When the trial court considered and ruled on Bank of America's motion for summary
judgment, Foster had waived his claims that Bank of America had calculated the time price
differential by the wrong methodology. What was at issue is whether section 348.119 ("Refund
Credit on Prepayment") operates to entitle Foster to a refund, and if so, whether section 348.120
("Amount of Refund Credit for Monthly Installment Contract") authorizes Bank of America to
assess a $25 acquisition fee. See Tex. Fin. Code Ann. §§ 348.119, .120. No party contests the fact
that Foster prepaid his motor vehicle retail installment contract. The essence of Foster's argument
is that his contract did not obligate him to pay a pre-determined amount of finance charges; instead,
he asserts that under his contract, finance charges accrued by a simple interest method, by which the
charges were not pre-determined but rather accrued on a daily basis on the outstanding balance over
the life of the contract. Therefore, Foster concludes, the prepayment of his contract did not require
that any finance charges be refunded. The evidence in the record belies Foster's contentions.

 The face of the contract states finance charges in the amount of $8259.34, which
represent the total charges over the seventy-two month period of scheduled payments. Indeed, the
contract clearly states that this is "[t]he dollar amount the credit will cost you." The contract also
shows that the $8259.34 was added to the "amount financed" of $22,340.66. The combined amount
of $30,600 is listed as the "total of payments," and the contract explains that this sum represents the
"amount you will have paid when you have made all scheduled payments." Foster characterizes the
$8259.34 amount as a mere "estimate" that is required to be disclosed and points to a section of the
contract labeled "promise to pay and payment terms," which he asserts proves that the transaction
was a simple interest contract. That section of the contract states that Foster promises to pay "the
principal amount of $22,340.66, plus finance charges accruing on the unpaid balance at the rate of
10.98% per year from today's date until maturity." It also states that finance charges accrue on a 365
day basis. Foster asserts that these provisions are consistent with a simple interest transaction in
which interest accrues on the outstanding balance on a daily basis. Bank of America responds that
the provision merely "sets out the method by which the finance charge was calculated" and that the
transaction was nonetheless structured as a transaction in which Foster agreed to pay a pre-determined amount of finance charges as part of the contract. Based on the contract and the evidence
in the record, we agree with Bank of America that section 348.119, and hence, section 348.120 apply
to this transaction.

 With its motion for summary judgment, Bank of America provided evidence that
included an affidavit from the Vice President of Bank of America and the company's records that
were maintained in connection with Foster's retail installment contract, plus a copy of the contract. 
The records indicate that although Foster would have paid finance charges in the amount of $8259.34
had he continued to make scheduled payments for the full seventy-two month period, he received
a "rebate" of part of this amount when he elected to pay the outstanding balance on the loan early. 
The payoff amount that Bank of America quoted to Foster, moreover, also indicates that Foster
received a refund of part of the pre-determined finance charges. Foster's response to Bank of
America's motion for summary judgment did not controvert this evidence. (5)

 When a buyer prepays a motor vehicle retail installment contract, section 348.119 and
either section 348.120 or section 348.121 are triggered. See Tex. Fin. Code Ann. § 348.119 (West
1998). For a contract such as Foster's, i.e., one that called for payment in equal monthly
installments, section 348.120 both establishes a means of calculating a refund credit and authorizes
the creditor to assess a $25 acquisition fee. Id. § 348.120. That Foster's retail installment contract
did not include a provision regarding an acquisition fee in the event of prepayment is no matter. 
Foster's contract includes a notice regarding Foster's right "under the law" to prepay the contract and
to obtain a partial refund of the finance charge "under certain conditions." (6) Under the finance code,
a retail buyer has the right to prepay a retail installment contract in full at any time before maturity. 
Id. § 348.118. In addition, the finance code entitles the buyer to a refund credit upon prepayment. 
Id. § 348.119. While Foster's contract is consistent with the provisions of the finance code, it merely
referenced his "legal rights" and did not specifically address the amount or means of calculating the
refund credit to which Foster was entitled. Section 348.120 provides a means of calculating the
refund credit and authorizes the creditor to assess a $25 fee against the credit. Because the statute
authorized the bank to charge this fee in calculating the refund credit, and because nothing in the
contract is contrary to the provisions of section 348.120, Bank of America did not breach its contract
with Foster. Accordingly, we overrule Foster's issue on appeal and affirm the grant of summary
judgment. Because of our resolution of this issue, we need not reach appellee's cross-points.


CONCLUSION

 Foster was entitled to a refund credit when he chose to pay the balance of his retail
installment contract earlier than anticipated in the agreement. Section 348.119 authorizes that a
buyer receive a refund credit and section 348.120 establishes a methodology by which to calculate
the minimum credit amount on a monthly motor vehicle retail installment contract. In computing
the amount of the credit, moreover, section 348.120 authorizes the creditor to assess a $25
acquisition fee. Therefore, we affirm the summary judgment granted in favor of Bank of America.



 

 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: June 6, 2002

Publish

1.   The parties' arguments seem to assume that all motor vehicle retail installment contracts
calculate the time price differential either by a simple interest or a precomputed formula. As the
above discussion makes clear, the finance code does not confine the universe of time price
differential contracts to only those with a simple interest or precomputed rate. 
2.   Because Foster's contract falls within the provisions of section 348.120, section 348.121
has no application to this case.
3.   The exhibit describes the $25 fee as a "prepay penalty." The term, "prepayment penalty,"
is defined in section 301.002(a)(15) of the finance code. Tex. Fin. Code Ann. § 301.002(a)(15)
(West Supp. 2002). However, the parties refer to this fee in their pleadings as an "acquisition fee"
or "acquisition charge." See Tex. Fin. Code Ann. § 348.120(b)(1) (West 1998). Because neither
party challenges the fact that the $25 "prepay penalty" is an "acquisition cost" charge, we will
assume that it is in fact an "acquisition cost" as referenced in the statute. 
4.   Foster brought this action as a class action pursuant to rule 42 of the Texas Rules of Civil
Procedure. The record does not indicate that a class has been certified. In any event, the issue is not
before us.
5.   There may be situations such as those described by Foster in which the finance charge is
not added to the amount financed at the time the contract is formed but rather accrues during the
contract; in such a situation, no "refund" of finance charge will be necessary. That is not this
transaction.
6.   The contract Foster signed includes a "Notice to Buyer" statement above the signature line
which reads as follows:


DO NOT SIGN THIS CONTRACT BEFORE YOU READ IT OR IF IT
CONTAINS ANY BLANK SPACES. YOU ARE ENTITLED TO A COPY OF
THE CONTRACT YOU SIGN. UNDER THE LAW YOU HAVE THE RIGHT
TO PAY OFF IN ADVANCE THE FULL AMOUNT DUE AND UNDER
CERTAIN CONDITIONS MAY OBTAIN A PARTIAL REFUND OF THE
FINANCE CHARGE. KEEP THIS CONTRACT TO PROTECT YOUR
LEGAL RIGHTS.