OPINION HEADING PER CUR 









                NO. 12-06-00324-CV

 

IN THE COURT OF APPEALS

 

TWELFTH COURT OF APPEALS
DISTRICT

 

TYLER, TEXAS

            

RUS-ANN
DEVELOPMENT, INC.,           §          APPEAL FROM THE 173RD

APPELLANT

 

V.        §          JUDICIAL
DISTRICT COURT OF

 

ECGC,
INC.,

APPELLEE   §          HENDERSON
COUNTY, TEXAS

 




 
 
 
 
 
 
 
 
 
 
 
 
 
 
 


 

 



OPINION

            Rus-Ann Development, Inc. appeals a temporary injunction
granted by the trial court enjoining it from proceeding with a forcible entry
and detainer action to recover a golf course it had leased to ECGC, Inc.  In three issues, Rus-Ann contends the trial
court abused its discretion in granting the temporary injunction because ECGC
had not timely exercised the option to purchase that was part of the lease,
ECGC had failed to comply with essential terms of the option contract, and  specific performance was not available to
ECGC as a remedy.  We affirm.

 

Background








            ECGC leased the Echo Creek Country Club (the “golf course”)
from Rus-Ann for one year beginning October 1, 2004.  ECGC exercised an option to continue the
lease through September 30, 2006.  On
December 6, 2005, Homer A. Lambert, President of Rus-Ann Development Company,
sent ECGC a letter declaring that it was in default under the terms of the
lease.  On December 14, ECGC sent a
letter in response stating that it was not in default but asking for more
information on the alleged defaults.  On
December 21, 2005, ECGC filed suit seeking a temporary injunction to prevent
Rus-Ann from evicting it under the lease. 
Correspondence flowed back and forth between Rus-Ann and ECGC over the
next several months regarding the alleged defaults under the terms of the
lease.  On March 21, 2006, Rus-Ann sent
ECGC a letter declaring that the lease was terminated.  The next day, ECGC sent Rus-Ann a letter
declaring that it was exercising its option to purchase the golf course.  On April 7, ECGC amended its suit for
temporary injunction, stating that it was “prepared and willing to perform in
accordance with the [option] agreement.” 
The trial court held two hearings on ECGC’s temporary injunction.  After the second hearing, the court said it
would enter an order granting the temporary injunction if ECGC tendered
$400,000 into the registry of the court along with a $1,000,000 promissory note
made payable to Rus-Ann Development to be paid over thirty years at six percent
interest.  These were the terms specified
in the option to purchase.  Following
ECGC’s compliance with these terms, the trial court entered an order for a
temporary injunction enjoining Rus-Ann from any attempt to evict ECGC from the
golf course pending a trial on the merits in the case.  

            Rus-Ann requested findings of fact and conclusions of
law, which were timely filed by the trial court.  Rus-Ann appealed the granting of the
temporary injunction to this court.  

 

Standard of Review

            A temporary injunction’s purpose is to preserve the
status quo of the litigation’s subject matter pending a trial on the
merits.  Butnaru v. Ford Motor Co.,
84 S.W.3d 198, 204 (Tex. 2002).  The only
question before the trial court is whether the applicant is entitled to
preservation of the status quo pending trial on the merits.  Walling v. Metcalfe, 863 S.W.2d
56, 58 (Tex. 1993).  To obtain a
temporary injunction, the applicant must plead and prove three specific
elements: 1) the cause of action against the defendant; 2) a probable right to
the relief sought; and 3) a probable, imminent, and irreparable injury in the
interim.  Butnaru, 84
S.W.3d at 204; Walling, 863 S.W.2d at 57.  

            The decision to grant or deny a temporary writ of
injunction lies within the sound discretion of the trial court, and the court’s
grant or denial is subject to reversal only for a clear abuse of that
discretion.  Butnaru, 84
S.W.3d at 204.  The trial court abuses
its discretion when it misapplies the law to the “established facts or when the
evidence does not reasonably support the conclusion that the applicant has a
probable right of recovery.”  Khaledi
v. H.K. Global Trading, Ltd., 126 S.W.3d 273, 280 (Tex. App.–San
Antonio 2003, no pet.) (citing State v. Southwestern Bell Tel. Co.,
526 S.W.2d 526, 528 (Tex. 1975)).  The
trial court does not abuse its discretion if some evidence reasonably supports
the trial court’s decision.  Butnaru,
84 S.W.3d at 211.  








            When, as here, specific findings of fact and conclusions
of law are filed and a reporter’s record is before the appellate court, the
findings will be sustained if there is evidence to support them, and the
appellate court will review the legal conclusions drawn from the facts found to
determine their correctness.  TMC
Worldwide, L.P. v. Gray, 178 S.W.3d 29, 36 (Tex. App.–Houston [1st
Dist.] 2005, no pet.).  After the trial
court files its original findings of fact and conclusions of law, any party may
file a request for specified additional or amended findings of fact or
conclusions of law.  Tex. R. Civ. P. 298; Gentry v.
Squires Constr., Inc., 188 S.W.3d 396, 408 (Tex. App.–Dallas 2006, no
pet.)

 

Cause of Action 

            In its first issue, Rus-Ann contends the trial court
abused its discretion in granting a temporary injunction enjoining it from
proceeding with its forcible entry and detainer action because there was no
evidence or insufficient evidence that ECGC had timely exercised its option to
purchase the golf course.  In the absence
of a timely exercise of the option, there can be no cause of action  for specific performance.  

            A forcible entry and detainer action is dependent on
proof of a landlord-tenant relationship. 
Dass, Inc. v. Smith, 206 S.W.3d 197, 200 (Tex. App.–Dallas
2006, no pet.).  Jurisdiction of forcible
entry and detainer actions is expressly given to the justice court of the
precinct where the property is located.  Aguilar
v. Weber, 72 S.W.3d 729, 731 (Tex. App.–Waco 2002, no pet.).  Without a landlord-tenant relationship, a
justice court has no jurisdiction to enter a judgment and may be enjoined by a
district court from doing so.  See id.
at 732.  When a tenant under a lease
containing  an option to purchase exercises
the option, a binding bilateral contract is formed.  Pitman v. Sanditen, 626 S.W.2d
496, 498 (Tex. 1981).  The relation of
landlord and tenant ceases and that of vendor and purchaser arises.  Id.  Therefore, if ECGC timely exercised its
option to purchase, then the trial court properly enjoined Rus-Ann from
continuing its forcible entry and detainer action in the justice court.  

            Rus-Ann first contends that the contract terminated
because ECGC failed to notify it in writing, as required by the lease, that it
was extending the term of the lease past September 30, 2005.  Evidence before the trial court showed that
ECGC could continue the lease following September 30, 2005 by increasing its
monthly rental payment from $7,500 to $8,500. 
It did so.  Rus-Ann accepted these
increased monthly payments   A lessor
waives its right to declare a lease terminated after its primary term if it
continues to accept monthly rental payments. 
Nardis Sportswear v. Simmons, 147 Tex. 608, 614, 218
S.W.2d 451, 454 (1949).  

            Rus-Ann also contends that it terminated the lease by
letter dated March 21, 2006, due to alleged breaches by ECGC.  Specifically, it complains that ECGC failed
to install a new entry gate, replace a shed, and install new carpet in the
clubhouse as required by an addendum to the lease.  On March 22, 2006, ECGC sent Rus-Ann a letter
declaring its intent to exercise its option to purchase the property.  The trial court made a finding that ECGC had
exercised its option to purchase.    

            The rights and duties of the lessor and lessee are
determined by the lease and are contractual. 
Exxon Corp. v. Pluff, 94 S.W.3d 22, 29 (Tex. App–Tyler
2002, pet. denied) (op. on reh’g). 
Whether a lease contract has been breached is a question of law.  See id.; see also Jack v.
State, 694 S.W.2d 391, 398 (Tex. App.–San Antonio 1985, writ ref’d
n.r.e.).  Therefore, the issue of whether
ECGC had breached the contract in a manner that allowed Rus-Ann to terminate
the lease before ECGC exercised its option to purchase was a question of law
for the court to decide.  The addendum
including the allegedly breached terms is entitled “Promissory Note” and was
signed more than two months after the lease was signed.  Lambert signed for Rus-Ann, but no one signed
for ECGC.  The lease does not impose a
deadline for accomplishing the three tasks. 
The court heard evidence from officers of both Rus-Ann and ECGC, who
gave conflicting testimony about whether the lease had been breached.  The trial court does not abuse its discretion
if there is some evidence reasonably supporting its decision.  Butnaru, 84 S.W.3d at 211; see
also Advance Components, Inc. v. Goodstein, 608 S.W.2d 737, 739
(Tex. Civ. App.–Dallas 1980 writ ref’d n.r.e.) (a departure from the contract
terms, not amounting to a material breach of the contract, will not prevent the
plaintiff from having the remedy of specific performance).  Rus-Ann’s first issue is overruled.

 

            

Probable Injury

            In its second issue, Rus-Ann contends that the trial
court abused its discretion in granting the temporary injunction because there
was no evidence or insufficient evidence that ECGC had complied with the
material terms of the contract and therefore was entitled to specific
performance.  Rus-Ann contends that ECGC
was required to close the sale within ninety days of the date in which it
exercised its option to purchase the golf course.  ECGC contends that it is entitled to a
temporary injunction and is allowed to show at the final hearing that it is
entitled to specific performance even though it did not tender payment within
ninety days as required by the option to purchase.  We agree.

            In Texas, the potential loss of rights in real property
is a probable, imminent, and irreparable injury that qualifies a party for a
temporary injunction.  See Franklin
Savs. Ass’n v. Reese, 756 S.W.2d 14, 15-16 (Tex. App.–Austin 1988, no
writ) (op. on reh’g).  It is well
understood that specific performance is more readily available as a remedy for
the sale of real estate than for the sale of personal property.  Scott v. Sebree, 986 S.W.2d
364, 369 (Tex. App.–Austin 1999, pet. denied). 
This is because damages are generally believed to be inadequate in
connection with real property.  Id.
at 370.  It is thoroughly settled that
where a defendant has openly and avowedly refused to perform his part of the
contract or declared his intention not to perform it, the plaintiff need not
make tender of payment of the consideration before bringing suit.  Burford v. Pounders, 145 Tex.
460, 466, 199 S.W.2d 141, 144 (1947).  

            Beginning with its December 6, 2005 letter and subsequent
correspondence, Rus-Ann left no doubt that it was refusing any attempt by ECGC
to proceed with the purchase of the golf course. Where tender of performance is
excused, the party must plead and prove that he is ready, willing, and able to
perform.  17090 Parkway, Ltd. v.
McDavid, 80 S.W.3d 252, 256 (Tex. App.–Dallas 2002, pet. denied).  ECGC pleaded that it was “prepared and
willing to perform in accordance with the Agreement between Plaintiff and
Defendant.”  During the two hearings on
the temporary injunction, ECGC presented testimony that it was ready to tender
the $400,000 in cash and the $1,000,000 promissory note into the registry of
the court to close the purchase of the golf course.  Rus-Ann complains that ECGC changed its
manner of financing for the $400,000 between the first and second hearings on
the temporary injunction.  This is
irrelevant.  When the trial court required
tender into the registry of the court, ECGC did so.  The record shows that ECGC was not required
to tender payment of the consideration before bringing suit due to Rus-Ann’s
refusal to perform and that there is sufficient evidence that ECGC was ready,
willing, and able to perform its duties under the terms of the option contract.  Rus-Ann’s second issue is overruled.  

 

Probable Right of Recovery

            In its third issue, Rus-Ann contends that the trial court
abused its discretion in granting a temporary injunction because the option
contract was not sufficiently clear and definite for enforcement by specific
performance.  It argues that essential
terms are missing, eliminating ECGC’s right to specific performance.

            Before a court will decree the specific performance of a
contract for the sale of land, or 
entertain a suit for damages for the breach thereof, the written
agreement or memorandum required by statute must contain the essential terms of
a contract, expressed with such certainty and clarity that it may be understood
without recourse to parol evidence.  Wilson
v. Fisher, 144 Tex. 53, 56, 188 S.W.2d 150, 152 (1945); see also Johnson
v. Snell, 504 S.W.2d 397, 398 (Tex. 1973).  (“Specific performance will be decreed only
if the essential terms of the contract are expressed with reasonable certainty.”)  The essential elements required, in writing,
for the sale of real property are the price, the property description, and the
seller’s signature.  See Lynx
Exploration and Prod. Co. v. 4-Sight Operating Co., 891 S.W.2d 785, 788
(Tex. App.–Texarkana 1995, writ denied). 
Those three essential elements are in the lease with option to purchase
in the instant case.  

            Rus-Ann contends that the only terms of the seller
financing included in the option to purchase contract were the term of thirty
years and the interest rate of six percent. 
It says that the other terms of the seller financing such as how, when,
where, how much, and to whom payments were to be made were not included.  However, these terms were part of the
provisions of the lease agreement.  The
court can look at both the option to purchase and the lease in determining the
terms of a contract to be enforced by specific performance.  See Frost Nat’l Bank v. L & F
Distributors, Ltd., 165 S.W.3d 310, 312-13 (Tex. 2005).  

            Rus-Ann also contends that because the deed of trust
clause stating whether the note is assumable or due on sale is not included in
the contract, it is unenforceable by specific performance.  We disagree. 
The failure of a real estate sales contract to provide the fundamental
provisions of a deed of trust does not render it unenforceable by specific
performance.  Smith v. Hues,
540 S.W.2d 485, 492 (Tex. Civ. App.– Houston [14th Dist.] 1976, writ ref’d
n.r.e.).  Rus-Ann further complains that
the option contract does not include terms relating to proration of taxes or
the place of closing.  Again, failure to
include these terms in the contract for the sale of real property does not
render it unenforceable by specific performance.  See id.  Finally, Rus-Ann contends that the option to
purchase does not include whether ECGC had a right to the partial release of
lots that it sold on the golf course during the thirty years.  That matter was covered in the lease.  Therefore, it is a term that can be
determined by the trial court at the final hearing.  See Frost Nat’l Bank, 165
S.W.3d  at 312-13.  We hold that the contract contained the
essential terms for a decree of specific performance and establishing a
probable right to the relief sought. 
Rus-Ann’s third issue is overruled.

 

Disposition

            Having overruled Rus-Ann’s three issues, we affirm
the trial court’s order granting a temporary injunction commanding Rus-Ann to
refrain from prosecuting an action to evict ECGC from the property known as
Echo Creek Country Club.

 

                                                                                                     JAMES T. WORTHEN    

                                                                                                                 Chief Justice

 

 

Opinion
delivered April 30, 2007.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

(PUBLISH)