Opinion issued October 23, 2003













In The
Court of Appeals
For The
First District of Texas




NO. 01-02-00451-CV




PHILIP NELSON, JR. AND CARRIE NELSON, Appellants

V.

ADNAN ALI NAJM, Appellee




On Appeal from the 151st District Court
Harris County, Texas
Trial Court Cause No. 98-58081




O P I N I O N

          This is an appeal from a bench trial in which the court awarded damages of
$100,000 plus pre-judgment interest and attorney’s fees to appellee/plaintiff, Adnan
Ali Najm, in his suit against appellants/defendants, Philip and Carrie Nelson, based
on Philip Nelson’s failure to disclose material information to Najm before Najm
bought Nelson’s gas station. Najm sued the Nelsons, bringing claims for deceptive
trade practices (DTPA),


 common law fraud, real estate fraud, and wrongful
foreclosure.
          In six issues presented for review, the Nelsons contend that (1) Najm’s
deceptive trade practices claim was barred by limitations; (2) there was no proof of
damages; (3) there was no “misrepresentation” that would support a recovery on any
claim; (4) the “as is” and buyer-inspection provisions in the sales contract precluded
recovery on all claims; and (5) there was no independent basis for recovery on the
wrongful foreclosure claim. We affirm.
          Facts
          The Nelsons owned the Cougar Texaco gas station near the University of
Houston for roughly 30 years and Philip Nelson operated it. In 1996, Najm bought
the station for $175,000. He made a down payment of $100,000 and executed a note
to the Nelsons for the remainder. 
          There were four underground gasoline tanks and one underground waste oil
storage tank. Although the gasoline tanks were registered with the Texas Natural
Resource Conservation Commission (TNRCC), the waste oil tank was not. Nelson
told Najm about the four gasoline tanks, but not about the waste oil tank. On the
commercial property disclosure form, Nelson checked the “not aware” box in
response to a question concerning underground storage tanks and “not aware” in
response to a question regarding toxic waste; he left all boxes blank in response to a
question regarding hazardous waste on the property. 
          The station was not in compliance with state environmental guidelines
governing underground petroleum storage tanks. As the station owner, Nelson was
required to comply with administrative requirements promulgated to regulate such
tanks. As part of what was called “Phase One,” Nelson should have implemented
modifications to assure tank and pipe system integrity by the end of 1989. See 30
Tex. Admin. Code Ann. § 334.44(b)(1) (1989) (Tex. Comm’n Envtl. Quality,
Underground & Aboveground Storage Tanks). By the end of 1994, as part of Phase
Two, Nelson should have installed spill prevention equipment. Id. § 334.51(b)(1)(B). 
Nelson did not comply with either Phase One or Phase Two. Despite testimony that
all gas station owners were regularly notified by TNRCC of changing environmental
regulations, Nelson testified that he never received any notices and that he relied on
“Mr. Texaco” to comply with all regulations. He did acknowledge, however, that he
received his annual dues notice from TNRCC. In addition to not disclosing the
existence of one of the tanks, Nelson did not comply with his statutory duty as the
seller to inform Najm in writing of a tank owner’s obligations in regard to tank
registration, construction, and certification. Id. § 334.9 (Seller’s Disclosure).
          The parties signed the earnest money contract in mid-June, and the closing took
place on July 1, 1996. In the interim, Najm asked Nelson if he could have the site
inspected. Nelson demurred, saying there was no need for testing. He told Najm that
testing would be a waste of money and that he had no problems with the government,
saying, “Look, you don’t have to make no test. This is a gas station. I’m selling gas. 
You see the people buying gas, selling gas, and that’s it. And I have been here 30
years. I don’t have any problem. I selling gas. Everything is fine.” Najm did not
pursue testing or arrange for any environmental inspections before the closing. 
Nevertheless, the property deed included a clause noting that [Najm] had inspected
the property and was relying solely on his own investigation, not on information
provided by [Nelson] or on [Nelson’s] behalf. In addition, the earnest money contract
contained two provisions pertinent to our analysis of this case. The first provision
specified that [Najm] was accepting the property “as-is” in its then-current condition. 
The second provision specified that the sale was contingent on [Najm’s] approval of
a contamination inspection.
          Shortly after the closing on the property, Najm’s mother died abroad; he was
out of the country for several months seeing to his mother’s affairs while Nelson
continued to run the gas station. When Najm returned, he took over operation of the
station. When the company that had supplied gasoline to Nelson told Najm it would
no longer service the station, Najm attempted to enter into a fuel contract with
Petroleum Wholesale, Inc., a gasoline supplier. However, when the supplier’s
representative, Joe Berry, came to the station to discuss the matter, Berry immediately
discovered that the soil was contaminated. He informed Najm that neither his
company nor any other could supply gas to the station until it came into compliance
with environmental regulations, and he estimated the cost of bringing the station into
compliance at approximately $60,000. He also informed Najm of the existence of the
waste oil tank.
          Najm asked Nelson to pay for the modifications, but he declined to do so. 
Najm never reopened the station and never obtained a loan to open a convenience
store on the premises as he had planned. He sold the property to Jackie Spencer for
$125,000, but stopped paying on the note he executed with the Nelsons. In 1998, the
Nelsons foreclosed on the property, reacquiring it for $87,000. They negotiated a
deal with Spencer that allowed him to repurchase the station from them for $135,000. 
          After the foreclosure, Najm sued the Nelsons for fraud and wrongful
foreclosure. Nelson removed all of the tanks from the property immediately after the
foreclosure. He did not permit Najm to test the soil at the site until ordered by the
trial court to do so. The report prepared by Najm’s expert showed that the soil was
contaminated. The report prepared by Nelson’s expert reached the opposite
conclusion, showing there was no contamination. The trial court awarded damages
to Najm and this appeal ensued.
Sufficiency of the Evidence
          In issues three, four and five, the Nelsons contend that (1) the evidence is
legally and factually insufficient to show that Philip Nelson made a material
misrepresentation and (2), the “as-is” and “independent inspection” provisions of the
contract negate causation on all of Najm’s causes of action. Thus, they contend that
Najm cannot recover on his fraud or real estate claims. In issue two, they contend
there is no or insufficient evidence of damages.
          Standards of Review
          When we review legal sufficiency, we review the evidence in a light that tends
to support the finding of the disputed facts and disregard all evidence and inferences
to the contrary. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex. 2001). 
When we review factual sufficiency, we conduct a neutral review of all the evidence. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). We will reverse for factual
insufficiency only if the ruling is so against the great weight and preponderance of
the evidence as to be manifestly erroneous or unjust. Minucci v. Sogevalor, S.A., 14
S.W.3d 790, 794 (Tex. App.—Houston [1st Dist.] 2000, no pet.).
          In a bench trial, the trial court, as fact finder, is the sole judge of the credibility
of the witnesses. Munters Corp. v. Swissco-Young Indus., Inc., 100 S.W.3d 292, 296-97 (Tex. App.—Houston [1st Dist.] 2002, pet. dism’d). The judge may take into
consideration all the facts and surrounding circumstances in connection with the
testimony of each witness and accept or reject all or any part of that testimony. Id. 
          When, as here, the trial court does not enter findings of fact and conclusions
of law after a bench trial, we may uphold the judgment on any legal theory supported
by the pleadings and evidence. Fair Deal Auto Sales v. Brantley, 24 S.W.3d 543, 546
(Tex. App.—Houston [1st Dist.] 2000, no pet.). As the Nelsons note, Najm’s
pleadings support causes of action for fraud, real estate fraud, wrongful foreclosure,
and DTPA violations. 
          Evidence of Fraud
          To recover for common law fraud, Najm was required to establish that (1)
Nelson made a material representation; (2) the misrepresentation was made with
knowledge of its falsity or made recklessly without any knowledge of the truth and
as a positive assertion; (3) Nelson made the misrepresentation with the intention that
it should be acted on by Najm; and (4) Najm acted in reliance on the
misrepresentation and thereby suffered injury. T.O. Stanley Boot Co. v. Bank of El
Paso, 847 S.W.2d 218, 222 (Tex. 1992); Texas Capital Sec., Inc. v. Sandefer 58
S.W.3d 760, 771 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). A failure to
disclose information does not constitute fraud unless there is a duty to disclose. 
Insurance Co. of N. Am. v. Morris, 981 S.W.2d 667, 674 (Tex. 1998).
          Nelson argues that he did not make an affirmative misrepresentation and did
not fail to disclose material facts. We cannot agree. The record reflects that he did
both. Nelson failed to disclose the existence of the underground waste oil tank,
which we conclude was a material omission. He did not verbally inform Najm about
this tank or disclose it on the commercial property form. He made an affirmative
misrepresentation when he told Najm—in response to a request to inspect the
property—that an inspection was not necessary, that everything was “fine,” and that
he had “no problem” with the government, while using the operation of the station
as demonstrative proof of these assertions. 
          Nelson contends that his assertions were true statements, and thus cannot be
considered misrepresentations. We consider it significant that Nelson, by making this
argument, effectively admits that he made these statements, because the record shows
that, although Najm testified that he met with Nelson on numerous occasions to
discuss the sale of the station, Nelson repeatedly denied ever meeting Najm before
the day of the closing. That observation aside, Texas courts recognize that a
statement that is literally true may be actionable if used to create an impression that
is substantially false. See State Nat’l Bank v. Farah Mfg. Co., 678 S.W.2d 661, 681
(Tex. App.—El Paso 1984, writ dism’d by agr.). A false representation may consist
of a deceptive answer or any other indirect but misleading language. Id. Here, the
trial court evidently determined that Nelson’s statements created a false impression. 
          At common law, fraud refers to an omission, or concealment in breach of a
legal duty, when the breach causes injury to another. Jones v. Texas Dept. of
Protective and Regulatory Servs., 85 S.W.3d 483, 491 (Tex. App.—Austin 2002, no
pet.). It may consist of both active misrepresentation and passive silence. Id. Texas
law has long imposed a duty to abstain from inducing another to enter into a contract
through fraudulent means. See Haase v. Glazner, 62 S.W.3d 795, 798 (Tex. 2001). 
          Relying chiefly on Prudential Insurance v. Jefferson Associates, 896 S.W.2d
156, 162 (Tex. 1995), Nelson contends that (1) he had no duty to disclose this
information because Najm could have discovered the tank himself upon “reasonable
investigation and inquiry” and there was no proof that Nelson had actual knowledge
of contamination or non-compliance with current environmental regulations, and (2)
the “as-is” clause in the contract and the independent inspection provisions in the bill
of sale and the deed preclude Najm from recovering on any of his causes of action,
even if Nelson had a duty to disclose. We do not agree. 
          Nelson had a statutory duty to disclose not only the existence of every tank on
the property, but also the regulations governing their functioning and maintenance. 
See 30 Tex. Admin. Code Ann. § 334.9. That Najm did not plead these regulations
does not extinguish Nelson’s duty. See Eckman v. Des Rosiers, 940 S.W.2d 394, 399
(Tex. App.—Austin 1997, no writ) (trial court has mandatory duty to take judicial
notice of Texas Administrative Code). Moreover, Nelson thwarted Najm’s attempt
to inspect the station. Nelson’s argument that the evidence only creates an inference
that he should have known about environmental regulations simply because he owned
the property is contradicted by Berry’s testimony that all gas station owners are
regularly notified by TNRCC of changing environmental regulations. Apparently,
the trial court did not find Nelson’s disclaimer of any knowledge to be credible, given
the number of years he owned the station, the TNRCC’s custom of sending all notices
directly to the owners, and his receipt of annual dues notices from the TNRCC. We
conclude that Nelson had a duty to disclose the existence of the waste oil tank.
          We further conclude that the “as-is” provision in the contract did not bar
Najm’s recovery. Although the court in Prudential held that an as-is agreement
negated causation that was essential to the plaintiff’s recovery for fraud, it also
pointed out that the plaintiff did not assert fraud in the inducement, and noted that a
buyer is not bound by an as-is agreement that he is induced to make because of the
seller’s fraudulent representation or concealment of information. 896 S.W.2d at 162;
see also Smith v. Levine, 911 S.W.2d 427, 432 (Tex. App.—San Antonio 1995, writ
denied) (noting that validity of “as-is” agreement is determined in light of whether
there was knowing misrepresentation or concealment of known fact). Given the
circumstances here, we conclude that the “as-is” clause was not valid because Nelson
concealed a known fact, and we hold that this clause did not preclude Najm’s
recovery on his fraud claims.
          The trial court assessed the parties’ credibility and evidently found that Nelson
made a material misrepresentation, knowing it was false, and intending for Najm to
act upon it. The record before us contains legally and factually sufficient evidence
to sustain the trial court’s determination that Nelson committed fraud. 
          We overrule issues three, four, and five.
          Evidence of Damages
          In issue two, the Nelsons contend that Najm cannot recover on any of his
claims because the evidence of damages is legally and factually insufficient. As a
threshold matter, we address Najm’s argument that Nelson has not preserved error
because he did not raise this challenge in a motion for new trial. Najm’s reliance for
this argument on Ex-Change Auto Sales v. Kut Auto Sales, 2002 WL 3148038 (Tex.
App.—Dallas 2002) (not designated for publication) is misplaced. The party in Ex-Change did not challenge the sufficiency of the evidence to support the damages
award; rather, his complaint addressed whether the trial court had applied a statutorily
incorrect measure of damages. Rule 324b of the Rules of Civil Procedure specifies
that a motion for new trial is a prerequisite to preserving error on appeal only in jury
cases, not in nonjury cases. Tex. R. Civ. P. 324b. It is well settled that challenges to
the sufficiency of the evidence in nonjury cases may be raised for the first time on
appeal. See Strickland v. Coleman, 824 S.W.2d 188, 191 (Tex. App.—Houston [1st
Dist.] 1991, no writ). As Nelson notes, the amendment to rule 33.1 of the Rules of
Appellate Procedure codified existing law by specifying that no motion for new trial
is required to preserve sufficiency challenges to the evidence or to damages in
nonjury cases. See Tex. R. App. P. 33.1(d). Therefore, we will address the merits of
this complaint.
          There are two alternative measures of damages for common-law fraud: the
out-of-pocket measure and the benefit-of-the-bargain measure. See Formosa Plastics
Corp. USA v. Presidio Eng’rs, 960 S.W.2d 41, 49 (Tex. 1998). Out-of-pocket
damages are determined by comparing the value paid to the value received, while
benefit-of-the-bargain damages compare the value as represented to the value
received. Id. In addition to these alternative measures of damages, Texas courts have
long held under general principles of common-law fraud that one who is induced by
fraud to enter into a contract has a choice of remedies: he may either recover his
monetary damages flowing from the fraud or he may elect the equitable remedy of
rescission in lieu of damages and demand a return of any amount paid. Scott v.
Sebree, 986 S.W.2d 364, 368 (Tex. App.—Austin 1999, pet. denied). This election
of remedies recognizes that, depending on the circumstances, a defrauded party may
not be made whole by a recovery of actual damages, but instead may need an
equitable remedy such as rescission. Id. When there is fraud in the inducement to
sign a contract, the injured party may elect damages on the contract or the equitable
remedies of rescission or reformation, but courts generally apply a less strict standard
when granting rescission or restitution. Smith v. National Resort Cmtys., Inc., 585
S.W.2d 655, 658 (Tex. 1979). 
          Nelson argues that Najm cannot recover benefit-of-the-bargain or out-of-
pocket damages because he did not establish the fair market value of the property at
the time of the sale. Fair market value is defined as the price a willing buyer would
pay to a willing seller. See Wendlandt v. Wendlandt, 596 S.W.2d 323, 325 (Tex.
App.—Houston [1st Dist.] 1980, no writ). Najm, as a willing buyer, agreed to pay
Nelson $175,000 for the property. Accordingly, the fair market value of the property
was this contract price. Nevertheless, the amount of the damage award persuades us
that it represented neither out-of-pocket nor benefit-of-the-bargain damages. Rather,
we conclude the trial court imposed an equitable remedy, making Najm whole by
returning to him the consideration he paid—$100,000. Nelson had already reacquired
the property via foreclosure; thus a true rescission of the contract was not possible;
nevertheless, this award was the functional equivalent of rescission because it
restored Najm to his original position before entering into the contract.
          Nelson contends that Najm was not entitled to rescission because (1) he did not
plead that issue and (2) he did not give timely notice that he intended to rescind the
contract and return, or offer to return, the property. We disagree with both of these
arguments. Customarily, a general prayer for relief will support any relief raised by
the evidence that is consistent with the allegations and causes of action stated in the
petition. See, e.g., Khalaf v. Williams, 814 S.W.2d 854, 858 (Tex. App—Houston
[14th Dist.] 1991, no writ). In addition to asking the trial court to return title to the
property to him, and award him damages for fraud, Najm’s petition included a general
prayer for relief. At trial, Najm’s counsel clarified the petition by acknowledging that
to receive both the property and damages would constitute a double recovery, and he
asked the trial court to award one or the other remedy. 
          We consider the contrary authority Nelson relies on to be distinguishable. In
Hairgrove v. City of Pasadena, 80 S.W.3d 703, 706 (Tex. App.—Houston [1st Dist.]
2002, pet. denied), the plaintiffs were not seeking rescission; rather, they sought to
enjoin adoption of a new tax rate. In Delaney v. Davis, 81 S.W.3d 445, 450-51 (Tex.
App.—Houston [14th Dist.] 2002, no pet.), the plaintiffs were seeking specific
performance. We consider these remedies to be sufficiently different from rescission
that the general rule permitting any relief supported by the pleadings should not be
abrogated here.
          We likewise reject the argument that Najm was required to provide notice and
an offer to return the property to be entitled to rescission.


 Although Nelson cites
Carrow v. Bayliner Marine Corp., 781 S.W.2d 691, 696 (Tex. App.—Austin 1989,
no writ), in support of his contention that such notice was required, Carrow (and the
authority on which it relies) dealt with rescission under the DTPA, not rescission as
a remedy for common law fraud. The decision to grant an equitable remedy is within
the discretion of the trial court. Sandefer, 58 S.W.3d at 774.
          We hold that the trial court did not abuse its discretion in awarding Najm
$100,000 in damages.
          We overrule issue two. 
          Given our disposition of issues two through five, we need not address whether
the DTPA claim was barred by limitations or whether there was an independent basis
for wrongful foreclosure. See Fair Deal Auto Sales, 24 S.W.3d at 546 (noting that
appellate court may uphold judgment on any theory advanced).
          We affirm the judgment.
 

                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Chief Justice Radack and Justices Keyes and Alcala.